McDaniel v. Putnam.

No. 20,855.

GEORGE MCDANIEL, *Appellant,* v. C. E. PUTNAM, as Executor, etc., *Appellee.*

SYLLABUS BY THE COURT.

1. CLAIM AGAINST ESTATE—*Payable on Death of Another Person—Claim Absolute and Unconditional—Claim Accrued When Created.* A claim payable on the death of another person is not a contingent claim that might never accrue, but is an absolute, unconditional claim payable in the future, the time of payment only being uncertain; it is a claim accrued when created, the payment merely postponed until the happening of an event which must surely transpire.

2. SAME—*Presentation of Claim—Statute of "Nonclaim"—Limitation of Actions.* Except by some provision in a will, requiring the keeping open of an estate longer than two years, the statute controls. A person has no power by an oral agreement with his creditor to establish a different rule as to the time for the presentation of a claim against his estate than the rule declared by the statute of "nonclaim," barring all demands against estates of deceased persons which are not presented within two years.

3. SAME—*Time to Present Claim Not Extended by Oral·Agreement.* More than two years after notice of the appointment of the executor of a deceased person, and before final settlement of the estate, plaintiff presented a claim against the estate, relying upon an agreement with the deceased in his lifetime, by which, in consideration of the payment to him of $5.00 upon the claim, which was then barred by the statute of limitations, he agreed not to present the claim against the estate until after the death of the wife of the deceased. Her death occurred two years after the appointment of the executor of her husband's estate. *Held,* that the claim is barred by the provisions in the executor's and administrator's act (Gen. Stat. 1915, §§ 4565, 4592) which require all demands against the estate of a deceased person to be exhibited within two years.

Appeal from Franklin district court; CHARLES A. SMART, judge. Opinion filed May 12, 1917. Affirmed.

*F. M. Harris,* of Ottawa, and *R. E. Cullison,* of Iola, for the appellant.

*W. B. Pleasant,* of Ottawa, for the appellee.

McDaniel v. Putnam.

The opinion of the court was delivered by

PORTER, J.:   In 1876 George McDaniel, then thirteen years old, went to live with his uncle, John McDaniel, on a farm in Franklin county.   He continued a member of the family until 1888, at which time his uncle married and he left to do for himself.   John McDaniel died November 25, 1912, and C. E. Putnam, who was appointed executor of his will, duly qualified.   More than two years after notice of his appointment George McDaniel presented a claim against the estate for work and labor on the farm of John McDaniel from 1876 to 1888, amounting to $2160.00, with credits on the claim as follows:

"September, 1885 ............................ $25.00
 October, 1885 .............................. 15.00
 February, 1888 .....'........................ 30.00
 June, 1892 ................................. 5.00
 November, 1912 ............................ 5.00"

. The claim with interest amounted to $5560.00.   At the time the claim was exhibited no final account had been filed by the executor and no notice of final accounting had been published. On the hearing of the claim the probate court sustained a demurrer to the evidence, and an appeal was taken to the district court.   A motion was sustained to require the plaintiff to make the statement of his claim more definite and certain; first, by stating in what way the alleged payment of five dollars made in November, 1912, avoided the statute of limitations; second, by showing why his demand is not barred by lapse of time and by reason of its not being filed in the probate court or exhibited to the executor within two years after the appointment of the defendant as such executor.

Thereupon the plaintiff amended his petition and alleged the making of an oral agreement with John McDaniel in November, 1912, "when the said claim of claimant for labor was barred by the statute of limitations and unenforceable," by which agreement, in consideration of plaintiff's promise not to "attempt to enforce payment of said claim during the life" of decedent's wife, and plaintiff's agreement that the claim should not become due until her death, the decedent agreed to pay and did pay plaintiff the sum of five dollars "upon said

claim." It is alleged that the wife of decedent died December 24, 1914, and that the administration of John McDaniel's estate was not closed, but remained open.

The defendant answered by a general denial, a plea that the action was barred by the general statute of limitations, and also because the claim was not filed in the probate court within two years after the appointment of the executor, and until after the executor had paid over and disbursed all of the assets of the estate. At the first trial the court overruled a demurrer to the evidence and the jury returned a verdict in favor of the plaintiff for $1490.00. A motion for a new trial having been granted, the cause was again tried before a jury on the same pleadings and evidence, and the court sustained a demurrer to the evidence, from which ruling the plaintiff appeals.

Plaintiff's evidence was that when John McDaniel married in 1888 he left the family because he could not get along with Mrs. McDaniel, who disliked him. A witness testified that Mrs. McDaniel objected to her husband making payments on the old claim; that at one time when George McDaniel visited at the home she asked her husband what George wanted, and he replied, "He wants me to pay him some money"; that she then said, "You will never give another cent as long as my head is hot," and that her husband replied, "Maybe your head won't always be hot." Walter McDaniel, a nephew of the plaintiff, testified that he overheard a conversation between George and John in November, 1912, when the latter was ill, and just a short time before his death. The substance of his testimony is that George asked the old gentleman in regard to his getting well, and his uncle said: "that he was n't going to get well. . . . Then George asked him if he intended to pay him anything for his work or help him out in any way. Then John told him he would, and told George to get the pocketbook in the dresser. George went and got the purse and gave it John. . . . He took five dollars out of the pocketbook and gave it to George, and he told him he would give him this five dollars for his work, and when she was gone—motioning towards the kitchen—for him to get the rest of his wages from the estate. . . . When John pointed towards the kitchen Mrs. McDaniel and Mrs. Wemmer were in there, but John did

not say who she was that he was pointing towards. . . . Well, I can make it plain by saying that he gave him the five dollars, and he said he would pay him this five dollars for his work, and when she was gone for him to go to the estate for the rest of his pay. . . . He told him this would renew it and then he might get the rest of it from the estate; that is the only thing that I remember of."

A number of reasons are advanced by the defendant to sustain the court's ruling. It is said there was no consideration for the extension because the petition alleges the making of the oral agreement upon the consideration of the five-dollar payment, "upon said claim," and that the plaintiff's promise to forbear the enforcement of a claim which he could not enforce lost him nothing. It is also insisted that the agreement was void under the statute of frauds because it was not to be performed within a year. The contract was made in November, 1912, and Mrs. McDaniel's death did not occur until December, 1914. It is insisted that if such an agreement is valid an oral contract to pay money after the death of a child who might live out the allotted span of life, would not contravene the statute/ and that the present case can not be controlled by the decision in *Pierson v. Milling Co.*, 91 Kan. 775, 139 Pac. 394, where an oral promise of employment for life was held not within the statute of frauds. The reason given there was, that the employment was to begin at once and to be continuous and might be entirely performed within the year.

We prefer to rest our decision, however, upon the failure of the plaintiff to present his claim within two years after notice of the appointment of the executor as required by the statute which is known as the statute of "nonclaim." After providing for the classification of demands against the estate of a deceased person, the executor's and administrator's act declares that "all demands not thus exhibited within two years shall be forever barred" (Gen. Stat. 1915, § 4565), and section 4590 of the General Statutes of 1915 declares:

"No executor or administrator, after having given notice of his appointment as provided in this act, shall be held to answer to the suit of any creditor of the deceased unless it be commenced within two years from the time of his giving bond."

The plaintiff relies upon the provisions of section 4592 of the General Statutes of 1915, which is section 108 of the ex-

ecutor's and administrator's act, and which provides that any creditor of the deceased whose right of action shall not accrue within two years after the date of the administration bond may present his claim to the court from which the letters issued at any time before the estate is fully administered. The plaintiff insists that his cause of action did not accrue until after the death of the wife of John McDaniel because he had agreed with McDaniel not to present the claim against the estate until after she was gone, but his claim was in no sense conditional or contingent. The purpose of the "nonclaim" statute is the speedy settlement of the estates of deceased persons in the interest of creditors, heirs and devisees, and to render certain the titles to real estate.

"Statutes designed to produce a speedy settlement of estates, and the relapse of titles derived under those who are dead, should be stringently enforced." (*Collamore v. Wilder,* 19 Kan. 67, 82.)

Similar statutes of nonclaim have frequently been construed by the courts. In *Fretwell v. McLemore,* 52 Ala. 124, it was said:

"There can be but one purpose in these statutory provisions, and that purpose is the speedy administration of estates; first, for the benefit of creditors, who have the priority of right, and when their claims are satisfied, the payment of legacies, or distribution to the heir or next of kin. When the heir or legatee succeeds to the estate, that it shall be to a title freed from the incumbrance of, or liability to debts. In subservience to this purpose has been the uniform construction of these statutes, and specially of that last referred to, known as the statute of nonclaim, which is now the subject of consideration. In the absence of this statute, a settlement of an administration, and the payment of legacies and the making of distribution, would be attended with the peril of future litigation by creditors against the legatees or distributees, to subject their legacies or distributive shares to the payment of debts. In making distribution, or paying legacies, the personal representative would act at his own hazard. (p. 139.)

"The construction it [the statute] has received has been that which was necessary to avoid the evils to which we have adverted as incidental to an administration governed by common law principles. It has been deemed to operate a complete bar to all demands, which could be charged on the assets subject to administration; a bar on which the personal representatives could rely with safety, and proceed to pay legacies or make distribution; a bar which a creditor could invoke, to protect the assets subject to the payment of his debt from diminution, by being compelled to allow participation therein by those not having presented their claims within the prescribed period; a bar on which the heir or legatee may

McDaniel v. Putnam.

insist, for the exclusion of all claims not presented, which would reduce or exhaust the assets, otherwise subject only to pay legacies, or to distribution. (p. 140.)

"The language of the statute is clear, unambiguous, and comprehensive. Words more significant to express every demand to which a personal representative can or ought to respond, or which can charge the assets in his hands subject to administration, or more expressive of every legal liability, resting upon the decedent, could not have been employed. 'All claims against the estate of a deceased person,' is the language of the statute. . . . All claims whether absolute or conditional, whether payable presently or in the future, are within the statute. *Jones v. Lightfoot*, 10 Ala. 17; *King & Barnes v. Mosley*, 5 Ala. 610; *Smith v. Grant*, 2 Root (Conn.) 142. It is only contingent claims—claims which may never accrue—that fall within the provision postponing a presentment 'until eighteen months after the same have accrued'; such as the liability of a surety who has no demand against the principal until his payment of the debt for which he is bound." (pp. 140, 141.)

The language of our statute is, in the words of the Alabama court, "clear, unambiguous and comprehensive," Upon the death of John McDaniel if the plaintiff had any claim at all against the estate it had already accrued. It was not a contingent claim that might never accrue, and the statute required it to be exhibited within two years from the appointment of the executor.

"A claim dependent upon a future contingency—on the happening of an event which may *never* happen—does not accrue until the event happens; until then it is not a claim. But death is an event which must certainly occur; and a claim payable on the death of another person is an absolute and unconditional claim, payable in the future, the time of payment only being uncertain. It is an accrued claim when created, the payment postponed until the happening of an event which must surely transpire." (*Farris v. Stoutz*, 78 Ala. 130, 133, 134.)

The evidence shows that the agreement upon which plaintiff relies was not that the debt would not be due until the death of Mrs. McDaniel, but merely that he would not present the claim against the estate of John McDaniel until after her death. In the meantime, before her death occurred the claim was barred by the statute. Except by some provision in his will postponing the time for closing the settlement of his estate, the statute controls, and John McDaniel had no more power by an agreement with a creditor to establish a different rule as to the time for the presentation of a claim against his estate than his executor would have had.

In *Collamore v. Wilder*, 19 Kan. 67, 81, the creditor was held bound to obey the plain requirements of the statutes, and the fact that he fails to present a claim in reliance upon "an agreement which the administrator had not the power to make is a mistake of law on his part for which the courts furnish no relief." It has been held that the statute absolutely extinguishes the right of the claimant instead of affecting merely the remedy. (18 Cyc. 937.)

The judgment is affirmed.